```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ZERELEASE HALL, o/b/o M.M.,

                Plaintiff,              12-CV-6068T

                                        DECISION
           v.                           and ORDER

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

                Defendant.
_____
```

**INTRODUCTION**

Zerelease Hall ("Plaintiff" or "Hall"), represented by counsel, brings this action on behalf of her minor daughter ("M.M.") pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ"), Michael Friedman, was not supported by substantial evidence in the record and was based on erroneous legal standards.

Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)") and 42 U.S.C. 405(g) seeking to reverse the Commissioner's decision and remand for calculation of benefits, or alternatively, for further administrative proceedings. The Commissioner opposes the motion and cross-moves for judgment on the pleadings. For the reasons set

forth below, I hereby deny the Commissioner's cross-motion for judgment on the pleadings and remand this claim to the Commissioner for further proceedings consistent with this decision.

## PROCEDURAL HISTORY

M.M. was born on April 11, 1996. Administrative Transcript ("Tr.") at 20. She was 11 years old on November 13, 2007, when her mother, Zerelease Hall, filed an application for SSI disability benefits on her behalf, alleging disability due to Attention Deficit Hyperactivity Disorder ("ADHD"), a learning disorder allegedly linked to lead exposure, and chronic migraine headaches. Tr. at 104-107.

The claim was initially denied on April 9, 2008. Tr. at 65-68. At Hall's request, an administrative hearing was scheduled for October 20, 2009. Tr. at 69. Plaintiff and M.M. appeared before the ALJ but elected to postpone the hearing to obtain counsel. Tr. at 34-41. On January 7, 2010, Plaintiff and M.M., represented by attorney Jaya Shurtliff, testified at the administrative hearing in Rochester, New York. Tr. at 42-63.

On February 25, 2010, the ALJ issued a decision, finding that M.M. was not disabled within the meaning of the Act. Tr. at 14-32. The Appeals Council denied Plaintiff's request for review on December 8, 2011, rendering the ALJ's decision the final decision of the Commissioner. Tr. at 5-8. This action followed on February 3, 2012.

**FACTUAL BACKGROUND**

At the time of the hearing, M.M. was a 13 year old individual in 8th grade at the Joseph C. Wilson Foundation Academy in the Rochester City School District. Tr. at 45-46. Hall claims M.M became disabled on September 9, 2007 when her attention deficit disorder ("ADHD") and elevated lead levels were causing marked to extreme limitations in her ability to function. Tr. at 109. M.M. reportedly has difficulty due to medically diagnosed ADHD, a learning disorder, and chronic migraine headaches. Tr. at 136, 149-150, 162, 170.

M.M. was born on April 11, 1996. Tr. at 104. Between February 2005 and July 2006, she was monitored for high lead levels at Rochester General Hospital. Tr. at 145-147. On July 27 2006, Dr. Banghart found blood lead levels at 4 (out of 0-9 ug/dL) and opined there was "no significant lead exposure." Tr. at 146. M.M. is not taking medications for elevated lead levels. Tr. at 149.

Upon reaching the 4th grade, M.M.'s mother requested that the Rochester City School District Subcommittee on Special Education evaluate M.M. Tr. at 176. Hall was concerned that M.M. needed additional academic services because she was falling below New York State standards in all areas of testing. Id.

Subsequently, M.M. was referred to School Psychologist Jessica Hayden for evaluations that were conducted on April 11 and 12, 2006. Tr. at 176. Ms. Hayden administered the Woodcock Johnson

Tests of Cognitive Abilities ("WJ-III") in order to evaluate cognitive performance. Tr. at 177-181. The scores indicated that M.M.'s cognitive ability was in the low range. Tr. at 177.

M.M. was then referred to a speech pathologist, Elizabeth Barbaglia, who evaluated her on April 24, 2006. Barbaglia concluded that M.M. had "adequate language skills for her age and gender…" but "…need[ed] extra processing time and wait time." Tr. at 184.

On January 16, 2007, Christine Ransom, Ph.D., conducted a child psychiatric evaluation. Tr. at 150. She found M.M.'s intellectual functioning "to be in the mildly mentally retarded range with a full scale IQ score of 68." Id. In a medical source statement, Dr. Ransom opined that M.M.'s "areas of difficulty are secondary to ADHD, currently mild and mildly mentally retarded intellectual functioning." Id. Non-examining pediatric specialist, Rajashree Mohanty, M.D., referenced this IQ score and found mild mental retardation in his report dated March 11, 2008. Tr. at 187-189. He also found that M.M. had a severe impairment of mild ADHD. Tr. at 187. He determined, however, that although the impairment or combination of impairments was severe, it did not meet, medically equal, or functionally equal any listing in the Social Security Administration's listings of impairments. Tr. at 187.

Beginning in September 2009, M.M. participated twice a week in in-school counseling with Lieve Bain Swan, Licensed Clinical Social Worker ("LCSW"). Tr. at 217. On December 14, 2009, Social Worker

Swan provided a medical source statement, opining that M.M. had moderate to marked limitations in the domains of acquiring and using information and attending and completing tasks. Tr. at 218-219.

In an annual review report, dated May 8, 2007, the Rochester City School District Subcommittee on Special Education recommended that M.M. participate in an integrated learning program, attending regular general education classes with supplemental aid when necessary. Tr. at 160. The committee also recommended house pick-up due to safety issues surrounding M.M.'s distractibility. Tr. at 160.

M.M. continued in her school's integrated education program. A progress report ("IEP report") for the 2007-2008 school year from the Rochester City School District's Individualized Education Program indicated that M.M.'s progress in the program was satisfactory. Tr. at 231. On April 16, 2009, School psychologist Margaret Shoopack examined M.M. for a state-mandated three year re-evaluation. M.M. was administered the WJ-III test again and her overall score was in the 11th percentile, with subtests ranging from the 3rd to 65th percentile, which Dr. Shoopack noted, suggests higher ability. Tr. at 201. Dr. Shoopack recommended that M.M. stay in her integrated education program and suggested that "classification of Other Health Impaired or Learning Disabled would be appropriate" for M.M. Tr. at 203. An IEP report from the 2009-2010 school year

summarizes Dr. Shoopack's findings and recommends that M.M. continue in Integrated Special Class for all core subjects. Tr. at 228. M.M.'s report card from December 4, 2009 shows that M.M. had a 2.00 GPA for that marking period. Tr. at 223.

Plaintiff and M.M. appeared with their representative for the administrative hearing before ALJ Friedman on January 7, 2010. Tr. at 42-63. Plaintiff's attorney representative directed the ALJ's attention to exhibit 2F in the record, showing "an IQ score of 68 by... [a] consultative child psychiatric doctor." Tr. at 50. Plaintiff testified that her daughter has difficulty in school. Tr. at 56-60. Also, she testified that she does not want M.M. to take the medication recommended for her ADHD "because [she felt] as though it might do something more to her than to calm her down." Tr. at 55. M.M. then briefly testified about her school and family. Tr. at 61-63.

## DISCUSSION

### I. Scope of Review

When reviewing an appeal of the Social Security Administration's denial of a claimant's application for benefits, Title 42 U.S.C., Section 405(g) directs the Court to accept the Commissioner's factual findings, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the content of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See generally Bell Atlantic Corp. V. Twombly, 550 U.S. 544 (2007).

**II. Even if Plaintiff's Impairments Did Not Meet Listing 112.05D, the ALJ Erred in Failing to Explain This Finding**

The ALJ decided that M.M. was not entitled to receive SSI benefits, finding that she was not disabled within the meaning of the Act. Tr. at 30. In his decision denying benefits, the ALJ adhered to the three-step sequential evaluation the Social Security Administration has developed to determine whether an individual under the age of 18 is disabled.[1] Tr. at 17-29.

---

[1]
The three-step sequential analysis requires the ALJ to consider the following:
(1) whether the child is engaging in "substantial gainful activity;" if so, it is presumed that the claimant is not

-7-

Under step one of the three-step analysis, the ALJ found that M.M. was a school-age child on the application date and an adolescent child at the time of the decision. He also determined that she had not engaged in substantial gainful activity. Tr. at 20. At step two, the ALJ found that "the claimant [had] the following severe impairments: headache[s], mild attention deficit disorder ("ADHD") and learning disorder (20 CFR 416.924(c))." Tr. at 20. However, at step three the ALJ found that M.M. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled any of impairments listed in Appendix 1, Subpart P of the Social Security Administration's regulations. Tr. at 20-29. The ALJ thus concluded that M.M. was not disabled within the meaning of the Social Security Act. Tr. at 29.

Plaintiff challenges the ALJ's finding at step three, contending that M.M.'s impairments meet the requirements of Listing 112.05 (Mental Retardation) in the designated "Listing of Impairments." 20 C.F.R. § 416.924(d); see also 20 C.F.R. pt. 404, subpt. P, app. 1 (2011) ("the listings"). "Listing 112.05 (Mental

---

disabled;
(2) if not, the ALJ must consider whether the child has a "severe" impairment or combinations of impairments that are severe;
(3) if the claimant suffers severe impairment(s), the ALJ considers whether the impairment(s) or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404 Appendix 1; if so and if the impairment meets the duration requirement, the claimant is presumed disabled.
20 C.F.R. § 416.924(a)(2011).

Retardation) contains six sets of criteria," any one of which, if satisfied, is sufficient to support a finding that a child's impairment meets the listing. 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00 (2011).

The requirements in 112.05D are satisfied if the claimant has a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." Id. § 112.05D. Thus, the regulations set forth a two-prong test for how a child's impairment would meet the level of severity for this listing. First, the child must demonstrate a full-scale IQ within the required range (60-70). Second, the child must demonstrate that he or she has another impairment that imposes an "additional and significant limitation of function." Id. The second-prong requirement is satisfied if an additional impairment(s) causes "more than minimal functional limitations, i.e., is a "severe" impairment(s), as defined in § 416.924(c)." Id. § 112.00.

It is not disputed that the second prong of section 112.05D of the listing is satisfied. The ALJ found that M.M.'s "headache[s], mild attention deficit disorder ("ADHD") and learning disorder" were all "severe" impairments under section 416.924(c). Tr. at 20. If an impairment(s) is "severe" under section 416.924(c), this means that the impairment(s) imposes an additional and significant limitation of function, thus satisfying the second requirement of

112.05D. 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00 (2011). <u>see also</u> Edmond v. Barnhart, 2006 U.S. Dist. LEXIS 69169, 2006 WL 2769922, at *7-9 (W.D.N.Y. 2006) (a "severe" impairment is considered to be the equivalent of a "significant" limitation for the purposes of Listing § 112.05D).

What is in dispute is whether ALJ properly assessed the first prong of section 112.05D of the listing. Plaintiff Hall argues that the first-prong requirement is satisfied by M.M.'s full-scale IQ score of 68, noted by consultative examiner, Dr. Christine Ransom, on January 16, 2007. Tr. at 150. <u>See</u> Plaintiff's Memorandum of Law in support of judgment for motion on the pleadings ("Pl's Mem."), Point II (Dkt. No. 7) at 12-13. For listing 112.05, the ALJ is required to make a finding based on documentation "in the form of standardized test results or in other medical findings supplied by the sources, or both." 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00 (2011)

The ALJ did not discuss whether claimant's impairments met Listing 112.05, nor did he discuss M.M.'s full scale IQ score of 68 from January 16, 2007 in his decision. Instead, he afforded "some weight to the opinion of the consultative examiner" who administered this IQ test, Dr. Christine Ransom, "because review of [the] report reveal[ed]... a fairly thorough examination." Tr. at 29. Therefore, although this IQ score was not specifically

mentioned in the decision, this statement indicates that the ALJ did not find the score to be invalid.

According to the Social Security Administration's Listings, the IQ score may not have been completely valid. The regulations provide that "IQ test results must... be sufficiently current for accurate assessment under 112.05." 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00D(10) (2011). IQ scores "obtained between ages 7 and 16 should be considered current for... 2 years when the IQ is 40 or above." Id. M.M. was ten years old at the time of her January 16, 2007 IQ test, so the full scale IQ score of 68 was only "sufficiently current" until January 16, 2009. Therefore, the Commissioner argues that this score was invalid as a matter of law because it was no longer "sufficiently current" at the time of the ALJ's decision, dated February 25, 2010. See The Commissioner's Memorandum of Law in support of judgment for motion on the pleadings ("Def's Mem."), Point B (Dkt. No. 9) at 15. However, Plaintiff filed for disability on October 19, 2007 for a period of disability starting September 9, 2007, thus the score was current and valid for almost two years of the period of alleged disability.

Having assigned weight to Dr. Ransom's evaluation of M.M., which included full scale intelligence quotient during the alleged period of disability that satisfied the threshold IQ necessary to meet subsection D of Listing 112.05, the ALJ should have provided an explanation why M.M.'s impairments do not meet the criteria of

-11-

listing 112.05D. see Booker v. Heckler, 1984 WL 622, at *3 (S.D.N.Y. 1984)(where claimant's symptoms appear to match those described in Listings, ALJ must provide explanation as to why claimant failed to meet or equal the Listings).

Because the ALJ did not mention the "validity" or "currency" of the IQ test, the Court finds that the ALJ failed to assess evidence relevant to the listings and did not explain what standard he applied to reach the conclusion that M.M. did not meet any of the listings. See Morgan o/b/o Morgan v. Chater, 913 F.Supp. 184, 188-189 (N.D.N.Y. 1996) (holding that a one-sentence denial is insufficient to support the determination, especially in light of the evidence to the contrary).

The Second Circuit has held: where "the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence." Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Here, there is a dispute as to whether M.M. met the first-prong of 112.05D and is therefore disabled as a matter of law.

Courts will remand when they are "unable to fathom the ALJ's rationale in relation to evidence in the record," Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982). The Commissioner argues that consistently low to low-average Woodcock-Johnson III ("WJ-III") scores in the record are persuasive in determining that

that there is substantial evidence in the record that supports the ALJ's decision. Def's Mem. at 16. However, the regulations provide that it is the ALJ's responsibility to "note and resolve any discrepancies between formal test results and the child's customary behavior and daily activities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00 (2011). A reviewing court "may not accept appellate counsel's post hoc rationalizations for agency action." Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Furthermore, the Commissioner's arguments are premised upon the WJ-III scores, which one of M.M.'s school psychologists, Jessica Hayden, whom the ALJ afforded fairly considerable weight (Tr. at 29), noted "should be analyzed with caution [due to] significant discrepancy among [M.M.'s] cognitive abilities." Tr. at 177. Particularly, in the area of cognitive efficiency, where M.M.'s WJ-III score was a 70, which placed her in the 2nd percentile of that sub-test. Tr. at 181.

Upon remand, the ALJ must address this issue. If ALJ determines that M.M.'s IQ score of 68 is not "sufficiently current" or should be discredited, the record should be developed further, and the decision should explain why claimant's valid verbal, performance, or full scale IQ, in conjunction with her severe impairments, do not meet the listing for mental retardation under § 112.05D. The ALJ should specifically address the factors in the listings for this section and gather additional information

concerning M.M.'s IQ that would be necessary or useful in this determination.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the decision denying disability benefits be **VACATED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Decision and Order.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    June 28, 2013
          Rochester, New York